■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LISA G. FINKLE, Appellant. [596 NYS2d 549] —Harvey, J. Appeal from a judgment of the County Court of Rensselaer County (Dwyer, Jr., J.), rendered January 8, 1991, upon a verdict convicting defendant of the crime of murder in the second degree.

On July 20, 1989, defendant was arrested and charged with murdering Carol Finkle, her stepmother (hereinafter the victim). During her questioning by the police, defendant admitted killing the victim after a family argument that also involved defendant's sister, Laura Finkle. Defendant initially concealed evidence of the crime and concocted a false story for the authorities. Defendant confessed her participation in the murder after the police confronted her with information concerning the incident that made them suspect that defendant was lying.

On the evening of defendant's arrest she was arraigned in Town Court and she was arraigned again the next day before County Court, which was acting as a local criminal court. A preliminary hearing was subsequently held, at the conclusion of which defendant was held over for Grand Jury proceedings. Defendant was indicted on two counts of murder in the second degree (Penal Law § 125.25 [1], [2]) and was arraigned before County Court on September 11, 1989. Defendant's motion to dismiss the indictment because she was not provided notice of the Grand Jury proceedings was denied. Her motion to suppress the inculpatory statements she made to the police was also denied following a hearing. After a jury trial defendant was convicted of one count of murder in the second degree

(Penal Law § 125.25 [1]) and was sentenced to a prison term of 25 years to life. This appeal followed.

There must be an affirmance. Initially, we express our disagreement with defendant's contention that the indictment against her should have been dismissed because she was not afforded written notice of the presentation of the case to the Grand Jury. CPL 190.50 (5) (a) provides that the People must inform a defendant of an impending Grand Jury proceeding if there exists an undisposed-of felony complaint in local criminal court which concerns the same offense. However, defendant was not entitled to notice of the Grand Jury proceedings in this case because the felony complaint had been disposed of by the local criminal court when it finished the preliminary hearing and held defendant over for Grand Jury proceedings (see, People v Conde, 131 AD2d 586; People v Green, 110 AD2d 1035, 1036). Accordingly, defendant's motion to dismiss the indictment was properly denied.

We similarly find that defendant's motion to suppress the inculpatory statements she made to the police was also properly denied. The suppression hearing testimony from the investigating law enforcement officials discloses that defendant was initially interviewed on July 19, 1989 at Albany Medical Center Hospital and then later interviewed at a State Police barracks at 11:45 A.M. on July 20, 1989. At each time, defendant gave statements generally indicating that during the afternoon of July 19, 1989 she was home watching television with her sister when the victim came home from work. Defendant stated that the victim soon became involved in an angry telephone conversation with someone defendant suspected was a male. Defendant then stated that the victim got off the phone and asked defendant to leave the house for awhile and to get some bread. Defendant said that she and her sister complied and when they returned they reportedly found the victim's lifeless body lying in a pool of blood. Defendant told the police that she noticed at that time an imprint of a man's boot in the blood near the body. She indicated that she thought the victim was having an affair and that perhaps her lover had killed her. Following these statements, Russell Spinner, the boyfriend of defendant's sister, contacted the police sometime after 7:00 P.M. on July 21, 1989 and indicated that defendant had told him that she had killed the victim. While Spinner was being interviewed, State Police Senior Investigator James Horton was told by his supervisor that "there was some information * * * that some of the things that [the girls] told me earlier in the day were,

in fact, believed to be false" and that he should reinterview defendant and her sister.

At this point, Horton testified that although he was now suspicious of defendant, he did not have probable cause to arrest her "because nothing had changed evidence-wise from the last time I had seen [defendant]". Moreover, Horton also had questions in his mind about other possible suspects including Spinner, because he was not sure of Spinner's motivation in contacting the police. Horton drove to where defendant and her sister were staying, asked them to accompany him back to the State Police barracks to look at some pictures and defendant agreed. Horton waited in the car while defendant and her sister got ready and they drove to the barracks, making small talk on the way.

Once back at the barracks at approximately 9:00 P.M., Horton took defendant back to the unlocked room where he had interviewed her earlier in the day and confronted her with his belief that some of the things she had told him earlier in the day might not be true. He told her that the phone call she had allegedly heard the victim participate in before she was killed was not recorded in the telephone company records, even though Horton had actually never obtained that information. Defendant admitted that the phone call had never occurred and that there was no boot print in the blood next to the body. Defendant told Horton at that point, "I wanted to tell you today. I felt sorry for you. You were so nice to me. I wanted to get you alone to tell you." She said she felt sorry for the State Troopers searching for the murder weapon out in the rain. She stated she felt bad about the victim's death but she also felt that the victim was trying to turn her father against her.

At this point in the questioning, Horton read defendant her *Miranda* rights. Defendant agreed to continue to talk to Horton and she gave further inculpatory statements and signed a consent form to allow a search of her car. Defendant was arrested after she provided a written statement. In her statement she admitted striking the victim with a wrench after the victim kicked her sister's dog and started fighting with her sister. Defendant then repeatedly stabbed the victim with a kitchen knife. Defendant threw the murder weapon and other items in a bag and she and her sister left the house and started driving. Defendant threw the bag in a dumpster behind a McDonald's restaurant. Defendant sent her sister into a grocery store to buy bread and on the way back to the house defendant made up the story to tell police. Defendant

also made further inculpatory statements later in the evening in the presence of State Trooper Maureen Tuffey.

Defendant contends on appeal that the inculpatory statements given at the State Police barracks at approximately 9:00 P.M. on July 20, 1989 should have been suppressed because she was allegedly in custody and was not provided her *Miranda* rights. The relevant inquiry in determining whether a person was in custody so as to entitle that person to *Miranda* rights is whether a reasonable person, innocent of any crime, would have reasonably believed that he or she was under arrest *(see, People v Murphy,* 188 AD2d 742; *People v Bell,* 182 AD2d 858, 859, *lv denied* 80 NY2d 927). In our view, County Court did not abuse its discretion in concluding that defendant was not in custody prior to being given her *Miranda* rights. While defendant contends that her questioning by the police was adversarial as opposed to investigatory *(see, People v Forbes,* 182 AD2d 829, 830, *lv denied* 80 NY2d 895), at the same time she admits that a confession was not coerced from her and accuses Horton of "seducing" admissions from her by appearing friendly and concerned. Given these admissions, we find that Horton's questions were investigatory rather than accusatory.

It is not determinative that defendant was questioned at the police station inasmuch as there is no evidence that she was restrained in any way *(see, People v Murphy, supra).* Further, the suppression evidence demonstrates that defendant went freely to the police station, which is evidence that she was not in custody *(see, People v Bennett,* 179 AD2d 837, 838; *People v Oates,* 104 AD2d 907, 911). Significantly, defendant was not told she could not leave and whether the State Police believed defendant was free to leave at the time is irrelevant inasmuch as no concerns of that nature were communicated to defendant *(see, People v Bell, supra).* The fact that defendant accompanied the police to the station under the pretext of examining photographs and she was told an untruth concerning the telephone records does not render the initial questioning custodial. Deceptive practices by the police are permissible as long as they are not fundamentally unfair or likely to produce a false confession *(see, People v Jackson,* 143 AD2d 471, 473; *People v Hoyer,* 140 AD2d 853, *lv denied* 72 NY2d 919). As it stands, given defendant's voluntary journey to the police station, the relative brevity of the questioning she underwent and the lack of evidence of restraint of movement, we conclude that a reasonable person in defendant's position

would not have felt unable to leave during questioning *(see, e.g., People v Forbes, supra)*.

Next, we find no error in County Court's decision to permit the People to call Bernardo Gaviria, a psychiatrist, to testify in rebuttal at trial. Initially, we note that there was no objection by defendant to this testimony at trial. In any event, we find that it was not improper for the People to call and examine Gaviria in rebuttal in light of defendant's affirmative defense testimony concerning extreme emotional disturbance. When the affirmative defense of extreme emotional disturbance is raised, the People have the right to call a psychiatrist to rebut the testimony supporting the defense *(see, People v Segal,* 54 NY2d 58; *People v Rossi,* 163 AD2d 660, 662, *lv denied* 76 NY2d 943; *People v Wenzel,* 133 AD2d 716, 716-717, *lv denied* 70 NY2d 939; *People v Cruickshank,* 105 AD2d 325, 329-330, *affd sub nom. People v Dawn Maria C.,* 67 NY2d 625). Additionally, there was no error in Gaviria's testimony insofar as the testimony was not related to any of defendant's specific statements *(see, People v Rossi, supra)*.

As for defendant's contention that she was denied due process and a fair trial by County Court's failure to direct the People to afford her sister immunity to testify, we are similarly unpersuaded. Significantly, the Court of Appeals has held that it is not an abuse of discretion by the People to withhold immunity from a witness when that witness may have been a participant in the crime and the defendant was able to establish a defense without the testimony *(see, People v Adams,* 53 NY2d 241, 247-248). In this case, defendant's sister had already been indicted on a charge of hindering prosecution in the first degree as a result of the circumstances surrounding the investigation of her stepmother's death. Additionally, the People's case was supported by substantial proof not built upon the testimony of immunized witnesses and defendant was able to offer a defense of extreme emotional distress based on other testimony; it appears that her sister's testimony would have been merely cumulative on this issue *(see, People v Howard,* 151 AD2d 990, 991, *lv denied* 75 NY2d 771). Accordingly, the denial of immunity to defendant's sister was not erroneous *(see, People v Thomas,* 169 AD2d 553, 554, *lv denied* 77 NY2d 911).

Defendant also claims that County Court committed reversible error by permitting the People to obtain a handwriting exemplar to be used at trial after the 45-day period for discovery motions had expired *(see,* CPL 240.40 [2] [b] [vi]; 240.90 [1])*.* Assuming, arguendo, that the People have not

established good cause for their failure to timely make their request, we nevertheless conclude that reversal on this issue is not necessary. Violation of CPL 240.90 (1) does not require suppression or reversal unless constitutionally protected rights are implicated (see, People v Patterson, 78 NY2d 711, 716-717). Because a writing exemplar is not testimonial evidence, no constitutional rights were implicated in this case (see, People v Smith, 86 AD2d 251, 252). Moreover, considering the overwhelming evidence of defendant's guilt, we have little difficulty in concluding that any error on this point was harmless (see, People v Moore, 112 AD2d 1050, 1051).

Finally, we turn to defendant's challenge to the remarks made by the prosecutor in his summation. We note initially that defendant has waived review of most of her objections by failing to object to them at trial (see, People v Longo, 182 AD2d 1019, 1022, lv denied 80 NY2d 906). Notably, when defendant did object during the summation, County Court gave prompt curative instructions which eliminated any prejudice to defendant (see, People v Cook, 186 AD2d 879, lv denied 81 NY2d 761). In any event, we have examined the prosecutor's summation closely and, while a number of his remarks were ill-chosen, we conclude that reversal in the interest of justice or otherwise is not required in this case.

Mikoll, J. P., Yesawich Jr., Mercure and Crew III, JJ., concur. Ordered that the judgment is affirmed.