OPINION OF THE COURT
Harold J. Rothwax, J.
The prosecution, by order to show cause, seeks an order compelling an uncooperative People’s witness in the criminal prosecution to submit handwriting exemplars for analysis prior to testifying at the defendant’s trial on charges of grand larceny and falsifying business records. At issue is the identity of the person or persons who wrote the initials "J.C.” on several fuel oil delivery slips, both as the initials of the deliverer, alleged to be the defendant, and the employee of the hospital who signed for the delivery, alleged to have been the witness. The defendant and the witness have the same initials and the witness has stated that he sometimes initialed delivery slips in the course of his employment with the hospital. The Attorney-General’s office, which is prosecuting this case, has brought the witness, a resident of New Jersey, into New York State for the purposes of testifying at the defendant’s trial, pursuant to CPL 640.10 (3), upon a showing that he is a material witness. The witness has refused to cooperate with or speak to the prosecution in advance of testifying and has refused voluntarily to give handwriting exemplars.
*1056 The witness opposes the order to show cause on three grounds: that the material witness order which brought him into New York was obtained in bad faith for the purpose of obtaining investigatory evidence rather than his testimony at trial, that he is absolutely immune from service while in New York for the purposes of testifying, and that handwriting exemplars may only be ordered after a showing of probable cause to believe that the writer has committed a crime. None of these arguments has merit.
The Attorney-General’s office properly brought the witness from New Jersey to New York as a material witness for the purpose of testifying at the defendant’s trial. That the trial was adjourned to a later date after the Attorney-General had sought the material witness order does not invalidate the order or demonstrate that it was sought in bad faith. The prosecution was not aware that the trial date would be changed when it commenced the procedure for subpoenaing the out-of-State witness.
Nor is the witness immune from service of process in New York of orders relating to the subject matter of his testimony in the very case for which he is a material witness. The common-law doctrine of immunity from service for persons who voluntarily appear in New York to testify (Moreo v Regan, 140 AD2d 313, 315 [2d Dept 1988]) does not apply because the witness appeared in New York in response to a subpoena and not voluntarily. (See, People v Aloi, 74 Misc 2d 263 [Nassau County Ct 1973].) The statutory immunity from service codified in CPL 640.10 (4) exempts a witness who enters New York in obedience to a subpoena directing him to appear and testify in a criminal matter in this State from "arrest or the service of process, civil or criminal, in connection with matters which arose before his entrance into this state under the subpoena.” This immunity does not extend to an order for the production of nonprivileged material relevant to the subject matter of his testimony in the case in which he was subpoenaed to appear. (See, Moffett v Arabian Am. Oil Co., 8 FRD 566 [SD NY 1948].)
Finally, the court’s power to order a witness to provide handwriting exemplars is not limited to situations where the prosecution can establish probable cause to believe that the witness has committed a crime, as the defendant maintains. The court has the power to order the witness to testify orally against his will and has concomitant power to order the witness to write his name. Handwriting is a physical characteristic and compelling a person to write for the purpose of identifying *1057 his handwriting violates neither the Fifth Amendment privilege against self-incrimination (Gilbert v California, 388 US 263 [1967]; United States v Dionisio, 410 US 1, 6-7 [1973]; People v Smith, 86 AD2d 251, 252-253 [3d Dept 1982]) nor the Fourth Amendment prohibition against unreasonable searches and seizures. (United States v Dionisio, 410 US, at 14-15; People v Smith, at 253; People v Finkle, 192 AD2d 783, 788 [3d Dept 1993].)
Two Fourth Amendment issues are involved in the procuring of physical evidence: the control or seizure of the person in order to obtain the evidence, and the search for and seizure of the evidence itself. (Matter of Abe A., 56 NY2d 288, 295 [1982]; People v Smith, supra, 86 AD2d, at 253.) The witness has properly been compelled to appear in court to give testimonial evidence upon a showing that he possesses material evidence, so there is no issue regarding the propriety of the seizure of his person. The taking of a handwriting exemplar, like a voice exemplar or fingerprints, does not constitute an unreasonable search. (United States v Dionisio, supra, 410 US, at 14-15; People v Smith, 86 AD2d, at 253.) Unlike the blood sample involved in Matter of Abe A. (56 NY2d 288 [1982], supra) upon which the witness relies, the taking of a handwriting exemplar does not involve any intrusion into the body of the witness and, therefore, "does not in itself impinge upon any interest protected by the Fourth Amendment”. (People v Smith, at 253.) Moreover, the handwriting exemplars are not sought in order to obtain incriminating evidence against the witness, who has not been charged with any crime and is not under investigation for any criminal wrongdoing. Rather, the purpose is to obtain evidence to establish that the defendant committed the crimes charged.
Therefore, the prosecution having established probable cause to believe that the witness has written some portion of the documents at issue in this case, the witness is directed to provide handwriting exemplars to the prosecution in advance of his appearance as a witness at trial.