■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JAMES MORROW, Respondent. [948 NYS2d 463]—

Kavanagh, J.

In December 2010, police had received information that drugs were being sold from an apartment in a building located at 246 Lark Street in the City of Albany. After receiving that information, police observed defendant entering the apartment building, then leaving 30 minutes later and walking down an adjacent street. The police stopped defendant, asked him for his name and, when he denied being at the apartment building, ordered him to place his hands on his head and spread his legs. When defendant complied, a bag of marihuana fell out of his pants leg. Defendant was then taken into custody and brought to police headquarters, where, prior to being subjected to a strip search, he admitted that he had cocaine secreted on his person. As a result, defendant was charged by indictment with criminal possession of a controlled substance in the third and fourth degrees, as well as unlawful possession of marihuana. He subsequently moved to suppress the physical evidence seized from him by the police, as well as statements he made after being stopped on the street. After a hearing, Supreme Court found that the police were not legally justified in conducting a frisk of defendant's person after they stopped him on the street and granted defendant's motion to suppress. The People now appeal.

We affirm. When defendant was stopped, the police had, at best, a "common-law right to inquire" regarding his activities, as well as his identification (*People v De Bour*, 40 NY2d 210, 223 [1976]). At that moment, they did not have reason to suspect that defendant was involved in any criminal activity, nor did they have the right to frisk him for weapons (*see People v Brannon*, 16 NY3d 596, 601-602 [2011]; *People v De Bour*, 40 NY2d at 223). Such a frisk of defendant's person would have been justified only if the police had reason to suspect that he had been involved in some criminal activity and was armed (*see id.*). Such a suspicion cannot be based upon "equivocal or 'innocuous behavior' that is susceptible of an innocent as well as a culpable interpretation" (*People v Brannon*, 16 NY3d at 602, quoting *People v Carrasquillo*, 54 NY2d 248, 252 [1981]; *People v Solano*, 46 AD3d 1223, 1224 [2007], *lv denied* 10 NY3d 817 [2008]).

Here, police officials testified that they had received reliable information that an African-American male in his early to mid-thirties with short hair was selling drugs from an apartment in

the building located at 246 Lark Street. Later, officer Kevin Meehan of the City of Albany Police Department observed defendant—an African-American male who fit this general description—enter the building and, as previously noted, exit the premises 30 minutes later. Meehan testified that he followed defendant for approximately two blocks and observed him turn his shoulders and look back towards Meehan and his partner as they sat in a marked police car. When Meehan exited the police vehicle and approached defendant, he noted that defendant's pants zipper was down, and he saw him turn away and then adjust his pants leg. These movements, and the fact that defendant appeared to Meehan to be agitated, prompted Meehan to believe that defendant might be carrying a weapon. Meehan ordered defendant to turn around and keep his hands in plain view. He then asked defendant his name, and when defendant denied coming from the Lark Street apartment building, Meehan conducted a frisk of defendant's outer clothing to determine if he was armed with a weapon. At this point in their encounter, Meehan had not observed defendant commit a crime nor, in our view, did he have a reasonable suspicion to believe that defendant was involved in any criminal activity (*compare People v Belle*, 74 AD3d 1477, 1479 [2010], *lv denied* 15 NY3d 918 [2010]). While defendant fit the description given to the police of the individual believed to be selling drugs from the apartment building, the description was general in nature and undoubtedly could fit any number of individuals in this area (*compare People v Washington*, 182 AD2d 520, 520-521 [1992], *lv denied* 80 NY2d 840 [1992]). Moreover, as Supreme Court found, defendant's statement to the police denying that he came from the building at 246 Lark Street, coupled with his appearance and movements upon exiting the building, may have authorized the police to stop defendant and inquire, but did not give them reason to suspect that defendant had committed a crime or was armed with a weapon (*compare People v Clinkscales*, 83 AD3d 1109, 1109-1110 [2011], *lv denied* 17 NY3d 815 [2011]; *People v Williams*, 67 AD3d 1050, 1052 [2009], *lv denied* 13 NY3d 942 [2010]).* As a result, defendant's motion to suppress was properly granted.

Mercure, J.P., Rose, McCarthy and Egan Jr., JJ., concur. Ordered that the order is affirmed.

* As for the People's argument that defendant could have been arrested for trespassing, Meehan testified that at the time defendant was stopped, he did not know whether defendant was authorized to be in any of the apartments located in the building at 246 Lark Street.