OPINION OF THE COURT
Jeanette Rodriguez-Morick, J.
By decision and order, dated September 2, 2015, this court denied as untimely the People’s motion for an order authorizing the taking of a saliva sample from defendant Muhammad Addison. The People now move to reargue.[1]
In their original moving papers, the People argued that they were entitled to such an order under CPL 240.40 based on the material and relevant evidence that a subsequent DNA comparison would yield. Though defendant opposed the motion based on untimeliness under CPL 240.90 (1), the People never acknowledged the motion’s late filing nor proffered good cause for the delay, as required by CPL 240.90 (1).
On reargument, the People make the following assertions: (1) this court erroneously held that the People’s motion implicates defendant’s constitutional rights; (2) even assuming the People were obligated to demonstrate good cause, the material and relevant evidence yielded by a DNA comparison should have warranted a finding that CPL 240.90 (l)’s good-cause requirement was satisfied and the delay therefore should have been excused; (3) defendant failed to demonstrate that he was prejudiced by the delay or that the delay was a result of prosecutorial bad faith; and (4) the length of delay between defendant’s arraignment and the People’s motion to compel a saliva sample—here, 340 days—was de minimis, and, accordingly, the court should have ignored the lapse (People’s reargument motion at 5).
Compelling Defendant to Submit to the Taking of a Buccal Swab Implicates Defendant’s Constitutional Rights under the Fourth Amendment
The People argue that because a saliva sample is evidence that is non-testimonial in nature, no constitutional rights are implicated by the instant motion—and as such, any delays in *500 seeking orders compelling defendants to submit to buccal swabbing are merely technical (People’s reargument motion at 5). They rely on a line of appellate court cases in which untimely CPL 240.40 motions have been held harmless.
The People properly characterize saliva samples as non-testimonial evidence. Indeed, not only saliva samples but handwriting and voice exemplars, and hair and blood samples have all been held to be non-testimonial in nature and their compelled production not in violation of the Fifth Amendment privilege against compulsory self-incrimination (see e.g. People v Lewis, 44 AD3d 422, 423 [1st Dept 2007] [affirming a conviction where trial court compelled defendant to produce handwriting exemplars despite an untimely motion by the People to compel the same under CPL 240.40 and implicitly holding no constitutional violation]; People v Finkle, 192 AD2d 783, 788 [3d Dept 1993] [“Because a writing exemplar is not testimonial evidence, no constitutional rights were implicated in this case”]; People v Smith, 86 AD2d 251, 252 [3d Dept 1982] [noting that it is a “well-established principle that a person’s voice, in contrast to the content of what is said, is merely an identifying physical characteristic, similar to one’s physical appearance, handwriting, fingerprints, or sample of one’s blood or hair, and that compelling a criminal defendant to speak solely for the purpose of physical identification of his voice . . . does not violate the privilege against self-incrimination”]).
But the People’s ostensible rebuttal of the Fifth Amendment analysis—an argument advanced neither by defendant nor relied on by the court—is an attack on a straw man. This is so because the relevant constitutional analysis is provided by the framework found not in the Fifth but in the Fourth Amendment (People v Hall, 10 NY3d 303, 307 [2008] [recognizing a post-Schmerber v California (384 US 757 [1966]) “judicial consensus . . . that visual body inspections are constitutionally distinct from searches that require the police to intrude beyond the surface of a person’s body and that the two types of searches are therefore subject to different legal standards”]; Schmerber, 384 US at 767 [noting that, “if compulsory administration of a blood test does not implicate the Fifth Amendment, it plainly involves the broadly conceived reach of a search and seizure under the Fourth Amendment”]; United States v Dionisio, 410 US 1, 14 [1973] [“The required disclosure of a person’s voice is thus immeasurably further removed from *501 the Fourth Amendment protection than was the intrusion into the body effected by the blood extraction in Schmerber” (emphasis added)]; Smith, 86 AD2d at 253 [“Dionisio establishes that seizure of a voice exemplar does not involve the severe, though brief, intrusion upon cherished personal security, or any intrusion into the body, and, therefore, like the seizure of fingerprints or handwriting, does not itself impinge upon any interest protected by the Fourth Amendment” (emphasis added and internal quotation marks omitted)]; Matter of Abe A., 56 NY2d 288, 295, 297 [1982] [applying a “Fourth Amendment inquiry . . . focusing on the bodily intrusion itself”]).
While a buccal swab is unquestionably a safe procedure,[2] it nevertheless constitutes an intrusion into the body and is therefore subject to Fourth Amendment protections (see id.; see also Schmerber; Dionisio; Abe A.). The lapse here then presents no mere technicality.
The Materiality of the Evidence Yielded by Granting the People’s Motion to Compel Does Not Serve to Excuse the Motion’s Late Filing
According to the People, given the obvious relevance, materiality, and incontrovertible nature of the evidence yielded by a DNA comparison, i.e., “scientific evidence bearing upon either the guilt, non-guilt, or the innocence of a criminal defendant” (People’s reargument motion at 4), no time constraints should be strictly enforced and good cause should be deemed satisfied where motions compelling the procurement of DNA evidence are concerned.
*502 But such a reading ignores the plain language of CPL 240.90,[3] which provides that “[a] motion by a prosecutor for discovery shall be made within forty-five days after arraignment” (CPL 240.90 [1] [emphasis added]). In the law, words should be read to say what they mean.[4] “It is an axiom of statutory construction that the legislative intent is to be ascertained from the language used, and that where the words of a statute are clear and unambiguous, they should be literally construed” (People v Munoz, 207 AD2d 418, 419 [2d Dept 1994], lv denied 84 NY2d 938 [1994]; People v Golo, 26 NY3d 358, 361 [2015] [“As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof”]). Here, the plain and ordinary language of the statute compels the conclusion that the prosecutor is required to make all discovery motions within 45 days of defendant’s arraignment (see id.; see also McKinney’s Cons Laws of NY, Book 1, Statutes § 76 [“Where words of a statute are free from ambiguity and express plainly, clearly and distinctly the legislative intent, resort may not be had to other means of interpretation”]).
Nevertheless, the People insist on an interpretation that renders meaningless statutory time limits for a whole subset of discovery motions and urges this court to ignore the first clause of CPL 240.90 (1) based on precedent. Yet a statute must be read to give effect and meaning to “every part and word thereof” (see Statutes § 98; see also e.g. Reed v State of New York, 78 NY2d 1, 9 [1991] [“We will not construe the statute in a way that renders two of its sections superfluous”], citing Statutes § 98).
To the extent that further guidance regarding legislative intent is needed, subdivision (2) of CPL 240.90 provides it. That subdivision references CPL 255.20, which requires that all pretrial discovery motions by the defendant be made within 45 days of defendant’s arraignment “or within such additional time as the court may fix upon application of the defendant” (CPL 255.20). Such language is notably absent from CPL 240.90 (1) with respect to the prosecution. That the legislature *503 drew a distinction between the time limits applicable to the parties is impossible to disregard and provides conclusive evidence that had the legislature intended to further relax the CPL 240.90 time limits beyond permitting a good cause extension, it certainly could have done so (see Statutes § 74 [“A court cannot by implication supply in a statute a provision which it is reasonable to suppose the Legislature intended intentionally to omit; and the failure of the Legislature to include a matter within the scope of an act may be construed as an indication that its exclusion was intended”]).
As an aside and as already noted, the CPL 240.90 (1) 45-day time limit is ameliorated by the second clause in that provision which permits the prosecutor to make the CPL 240.40 motion “at any time before [the] commencement of trial” so long as good cause is shown. A review of the cases interpreting “good cause” demonstrates that it takes very little to satisfy this requirement (see e.g. People v Acosta, 49 Misc 3d 957, 960 [Crim Ct, Kings County 2015] [noting, where the People filed the motion 326 days after the defendant was arraigned, that the People’s diligent efforts to obtain updates from the New York City Office of Chief Medical Examiner could establish good cause, but finding no such proof on the circumstances there]; see also People v Vernon B., 35 Misc 3d 1241 [A], 2012 NY Slip Op 51097[U], *1 [Crim Ct, Kings County 2012] [finding good cause for untimely motion to compel, which was filed five months after the defendant’s arraignment, based on delays attributable to laboratory delays]).
Yet, despite successive motions, no good cause was ever proffered here.
Defendant is Not Required to Show Prejudice or Prosecutorial Bad Faith Where the People Seek a CPL 240.40 Order But Has Failed to Satisfy the Relevant Statutory Requirements
Reading additional burden-shifting provisions into CPL 240.90, the People urge the court to impose upon defendant the burden of demonstrating prejudice or bad faith before requiring the People to establish good cause for filing an untimely CPL 240.40 motion to compel (see People’s reargument motion at 6-7 [“The prosecution’s failure to comply with the statutory time period set forth in CPL 240.90 (1), without a showing of good cause, does not warrant relief sought by a defendant absent a showing of prejudice”]).
Despite the obvious—that it is the People who seek an order by way of their motion to compel and not defendant—the *504 People’s argument characterizes the instant motion as if it were a motion to preclude by defendant (see id. at 7 [arguing that “the severity of the sanction (i.e., preclusion) sought by” defendant is grounds for granting the People’s motion to compel]). This reading of CPL 240.90 turns the statute’s good-cause exception on its head.
The People draw support from various cases (People’s re-argument motion at 5-6), none of which involved a motion to permit a bodily intrusion implicating a defendant’s Fourth Amendment rights (People v Jenkins, 98 NY2d 280, 284 [2002] [ballistics report]; Lewis, 44 AD3d at 423 [writing exemplar]; Finkle, 192 AD2d at 788 [writing exemplar]). While these appellate courts clearly set aside the plain language of CPL 240.90, they did so (1) in the absence of a constitutionally implicated right and (2) in the post-conviction context, where appellate courts have applied a harmless-error analysis to assess whether there was actual prejudice to the defendant.
The Third Department’s decision in Finkle, relied upon heavily by the People, typifies this two-step analysis. There, the Court held as follows: first, “[b]ecause a writing exemplar is not testimonial evidence, no constitutional rights were implicated in this case” (192 AD2d at 788); and, second, “considering the overwhelming evidence of defendant’s guilt, we have little difficulty in concluding that any error on this point was harmless” (id., citing People v Moore, 112 AD2d 1050, 1051 [2d Dept 1985] [holding as erroneous the trial court’s decision to permit the introduction of blood-sample evidence, noting, “under the facts of this case, such error was harmless” given other, overwhelming evidence of the defendant’s guilt]).
In contrast, the issue presently before the court is whether it should grant, in the first instance, the People’s untimely motion to compel, notwithstanding that the sought-for relief implicates defendant’s Fourth Amendment rights. This court declines to do so.
Delays, Whether or Not De Minimis, Require Good Cause Excusal
The People’s final adjuration is that this court treat the delay here as de minimis (People’s reargument motion at 5, citing People v Tyran, 248 AD2d 1011, 1011 [4th Dept 1998]). Even accepting the premise upon which this argument is based— that the “15-day delay” in Tyran is “minimal” to the same degree as the 340-day delay here—the Fourth Department’s *505 holding in Tyran was based on both the de minimis nature of the delay and the fact that “the People [had] established good cause for their failure to make a timely motion” (Tyran, 248 AD2d at 1011).[5]
Here, because the People’s motion implicates a constitutional right, was filed nearly one year after defendant’s arraignment, and without any showing of good cause, this court’s denial of the People’s application stands.

. This decision and order serves to memorialize the court’s October 13, 2015 oral ruling denying the instant motion.

. Indeed, the proposed procedure to extract DNA from defendant (i.e., saliva swab) is far less invasive than other methods used to collect corporeal evidence (e.g., blood draw) (see Abe A., 56 NY2d at 299 [approving order directing the drawing of blood, noting that such procedure is “in today’s world hardly less routine than taking one’s temperature”]; see also United States v Amerson, 483 F3d 73, 84 n 11 [2d Cir 2007] [“If . . . the DNA were to be collected by cheek swab (rather than by blood sample), there would be a lesser invasion of privacy because a cheek swab can be taken in seconds without any discomfort”]), and there is no risk of serious injury inherent in the procedure itself (see People v Ellington, 36 Misc 3d 1207[A], 2012 NY Slip Op 51219[U], *5 [Sup Ct, Bronx County 2012] [“This court finds that the manner in which the District Attorney seeks to take a sample of defendants’ saliva, a swab inside the defendant’s mouth, is accepted as both safe and reliable”]).

. Criminal Procedure Law § 240.90 (1) applies to motions filed pursuant to CPL 240.40 (2) (b) (i)-(vii) (see e.g. Lewis, 44 AD3d at 423 [applying CPL 240.90 (1) to motion to compel handwriting exemplar]).

. Given the Finkle and Lewis line of cases, the People cannot be faulted for arguing in favor of rejecting this premise (see, infra, where the court discusses the holdings of these cases relating to same).

. The Tyran court did not elaborate on what exactly constitutes good cause. Instead, it briefly noted its good-cause finding and invoked harmless error (see Tyran, 248 AD2d at 1011 [“The 15-day delay in making the motion was minimal, and the People established good cause for their failure to make a timely motion (see, CPL 240.90 [1]). In any event, considering the overwhelming evidence of guilt, any error is harmless (see, People v Finkle, 192 AD2d 783, 788, lv denied 82 NY2d 753)”]).