OPINION OF THE COURT
April A. Newbauer, J.
On August 8, 2016, the court denied the prosecution’s late motion to compel a saliva sample from the defendant for the purpose of DNA analysis. In doing so, the court indicated the motion could be renewed upon a specific showing of good cause if the prosecution served and filed it within 10 days. On August 17, 2016, the People filed a motion to renew pursuant to CPLR 2221 setting forth the particular steps executed by the assigned Assistant District Attorneys in order to secure a timely forensic biology report to determine whether there was genetic material suitable for testing on the swabs taken from the weapon. The defendant opposed the motion, arguing that the People’s renewed proffer should be rejected because they did not provide proof of communications which show the New York City Office of Chief Medical Examiner (OCME) created the delay by denying the District Attorney’s requests to test the swabs. For the reasons stated below, the motion is granted.
Facts
Defendant Christopher Sanon is alleged to have possessed a loaded .25 caliber pistol on October 12, 2015 at approximately 11:10 p.m. in the vicinity of Conner Street and Boston Road in Bronx County. The firearm was allegedly recovered at the scene *1010 on October 12, 2015 and vouchered. The People contend that on October 26, 2015, an assistant district attorney (ADA) requested that swabs taken off the weapon be tested for genetic material. This was 14 days after the defendant’s arrest. On October 28, 2015, the District Attorney’s Office was informed that OCME declined to test the swabs because the weapon was recovered on the defendant’s person and OCME’s policy was not to perform testing in that type of case.
On November 10, 2015, the defendant was indicted on counts of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]) and related charges. On December 3, 2015, a newly assigned Assistant District Attorney (Ruiz) sent the arresting officer in this case with the swabs to the NYPD Laboratory to request a laboratory report. On December 7, 2015, the Assistant renewed the prosecution’s request to OCME asking that the swabs be tested for genetic material. The next day, OCME reiterated to the new Assistant that its policy was not to test firearms recovered on a defendant’s person. On January 6, 2016, the defendant was arraigned in the Supreme Court on this indictment. On February 4, 2016, ADA Ruiz sent a third request via email to OCME after receiving information from an Assistant District Attorney assigned as a liaison to OCME (ADA Outstatcher) that a doctor Tara Santore of OCME had agreed to test the swabs.
The statutory 45-day period to move for DNA testing expired on February 22, 2016. It was not until March 24, 2016 that ADA Ruiz next communicated with OCME and learned that testing had not yet been conducted. That same day, Assistant District Attorney Ruiz sent a follow-up email reiterating the request that the swabs taken of the weapon be tested for genetic material pursuant to the agreement between Assistant District Attorney Outstatcher and Dr. Santore. It was apparently then that ADA Ruiz learned that the swabs were not at the OCME, and arranged for them to be delivered or redelivered. On May 24, 2016, ADA Ruiz followed up to see if the forensic biology report was ready and learned that the testing had not been completed. On June 1, 2016, ADA Ruiz finally received the report related to the swabs. On June 2, 2016 he filed the motion to compel.
Conclusions of Law
Criminal Procedure Law § 240.90 (1) requires that “[a] motion by a prosecutor for discovery shall be made within forty- *1011 five days after arraignment, but for good cause shown may be made at any time before commencement of trial.” The statutory time frame is mandatory except for good cause circumstances which render compliance infeasible. In their current motion, the People addressed the time line of their actions from the swabbing of the weapon and vouchering of the swabs until the time the OCME received the swabs for testing. On balance, the court finds that the People used sufficient diligence in attempting to have the swabs of the weapon tested for genetic material that they be permitted to extend the statutory time.
The court finds troubling that the People both: (1) ignored the February 22, 2016 deadline by waiting until March 24, 2016 to follow-up with OCME; and (2) did not explain in their previous papers the underlying reasons for making a late motion. Even de minimis delays require a showing of good cause. (See People v Addison, 51 Misc 3d 498 [Sup Ct, Bronx County 2016].) However, the People also acted diligently in making their initial requests for testing long before the superior court arraignment, in fact, on the date of the indictment. The People sent the swabs of the weapon to OCME 14 days after the defendant’s arrest, and well before the Supreme Court arraignment. At that time, OCME’s existing policy prevented the swabs of the weapon from being tested. There then ensued an arduous series of conversations and an eventual reversal of the policy — at least in this case — before the 45-day deadline. According to the current ADA’s papers, at this point the former assigned Assistant District Attorney apparently assumed that OCME had the swabs and would test them. In circumstances such as these, it falls to the assistant district attorneys to coordinate and monitor the steps that must be taken by their law enforcement and agency partners, even when they encounter significant resistance and non-action. Their own procrastination and failure to supervise the process competently contributed to the delay and to their inability to comply with the statute.
Yet in the absence of any discernible prejudice to the defendant — who was at liberty pending trial — the court finds good cause based on the totality of the circumstances. (See e.g. People v Matos, 37 Misc 3d 252 [Crim Ct, Kings County 2012].) Once the swabs were returned to OCME and the District Attorney’s Office received the lab report, the ADA immediately filed the motion to compel. The Office of Chief Medical Examiner’s *1012 report is dated June 1, 2016. The People’s motion was filed June 2, 2016. The People cannot file a motion to compel a sample of defendant’s saliva before they are aware that suitable genetic material exists for testing. (See Matter of Valdes v DeRosa, 28 AD3d 781, 783 [2d Dept 2006]; see also People v Vernon B., 35 Misc 3d 1241[A], 2012 NY Slip Op 51097[U], *1 [Crim Ct, Kings County 2012] [finding good cause for untimely motion to compel which was filed five months after the defendant’s arraignment, based on delays attributable to the laboratory delays].) The defendant failed to assert any prejudice as a result of the delay. (See People v Lewis, 44 AD3d 422, 422-423 [1st Dept 2007], lv denied 9 NY3d 1035 [2008]; People v Ruffell, 55 AD3d 1271 [4th Dept 2008], lv denied 11 NY3d 900 [2008]; People v Jenkins, 98 NY2d 280 [2002].)
Under Criminal Procedure Law § 240.40 (2) (b) (v), a court may order the defendant to provide non-testimonial evidence including requiring the defendant to provide a sample of blood from his body in a manner not involving an unreasonable intrusion. In Matter of Abe A. (56 NY2d 288 [1982]), the Court of Appeals announced the standard to be used before a suspect can be required to provide a sample of his or her blood in furtherance of an investigation of a crime. The Court held that an order to obtain a blood sample may issue if the People establish: (1) probable cause to believe the suspect has committed a crime; (2) a clear indication that relevant material evidence will be found; and (3) that the method used to secure the sample is safe and reliable.
Here, the court finds that the People satisfied all the requirements of Abe A. The evidence presented before the grand jury established probable cause to believe that the defendant committed the crimes charged in the indictment by the grand jury, and supports the motion for a buccal swab. There is also a clear indication that the relevant material will be found as the allegation is that a firearm was in the defendant’s possession. The DNA test results from the firearm may result in material and relevant evidence. (See People v Shields, 155 AD2d 978 [1989].) A comparison of the known DNA profile of a sample from that firearm to the defendant’s DNA buccal swab would be relevant and material to the issue of the identity of the perpetrator. Finally, the method of swabbing the inside of the defendant’s mouth has been deemed to be safe and reliable. (See Matter of Abe A., 56 NY2d 288, 299 [1982].) As the People have advanced, DNA testing may either include or *1013 exclude the defendant from involvement with the weapon. The defense does not even challenge this aspect of the People’s application on its merits. Accordingly, for the reasons stated, the People’s motion for an order, pursuant to CPL 240.40 (2) (b) (v), directing that the defendant submit to the taking of an oral swab from his mouth for DNA testing and analysis is granted.