Lynch, J.
 

 Appeal from a judgment of the County Court of Tompkins County (Rowley, J.), rendered August 15, 2014, upon a verdict convicting defendant of the crimes of robbery in the first degree and criminal possession of a weapon in the third degree.
 

 Defendant was charged with robbery in the first degree and criminal possession of a weapon in the third degree after he was arrested in November 2013 for the knife-point robbery of a café located on the Cornell University campus. In pretrial motions, defendant sought to suppress certain evidence as the product of an unlawful stop and detention, and the People sought orders compelling defendant to provide his DNA and to allow the use of reasonable force to obtain defendant’s DNA. County Court denied defendant’s motion to suppress and granted the People’s motion to obtain DNA evidence, but defendant refused to provide a buccal swab sample. The court then granted the People’s request to allow testimony of the efforts by the police to obtain a DNA sample and defendant’s refusal to cooperate. In addition, the court provided a consciousness of guilt charge, which permitted the jury to infer defendant’s guilt from the refusals. Following a jury trial, defendant was found guilty as charged, and was sentenced to concurrent prison terms of 10 years plus five years of postrelease supervision for the robbery conviction and 3V2 to 7 years for the criminal possession of a weapon conviction. Defendant now appeals.
 

 Initially, we find that defendant’s motion to suppress was properly denied. “Where a police officer entertains a reasonable suspicion that a particular person has committed, is committing or is about to commit a felony or misdemeanor, the CPL authorizes a forcible stop and detention of that person” (People v De Bour, 40 NY2d 210, 223 [1976] [citations omitted]; see CPL 140.50 [1]; People v Stroman, 107 AD3d 1023, 1023 [2013], lv denied 21 NY3d 1046 [2013]). “Reasonable suspicion is the quantum of knowledge sufficient to induce an ordinarily prudent and cautious [person] under the circumstances to believe criminal activity is at hand” (People v Cantor, 36 NY2d 106, 112-113 [1975] [citations omitted]). “[I]n justifying the particular intrusion [,] the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion” (People v Rosa, 30 AD3d 905, 907 [2006] [internal quotation marks and citations omitted], lv denied 7 NY3d 851 [2006]; see People v Brannon, 16 NY3d 596, 602 [2011]; People v Nesbitt, 56 AD3d 816, 818 [2008], lv denied 11 NY3d 928 [2009]).
 

 At the suppression hearing, Michael Scott, a uniformed officer at the Cornell University Police Department testified that he received a call to respond to a robbery at a café located on campus. While en route, Scott received via radio transmission information that the suspect had used a knife during the incident and that he fled to the Plant Sciences Building (hereinafter PSB), which was located approximately 100 yards away from the building where the café was located. Scott also received a description of the subject as a “black male, approximately [five feet five inches] to [five feet seven inches], wearing a dark hoodie, jeans . . . [and] a [light colored] blue or white hat or scarf.”
 

 When Scott arrived at the PSB, he met another Cornell University officer and they decided that one would enter the PSB at the front of the building and the other at the back. Scott testified that, before entering the building, he observed through a window “a shorter black male” wearing a grey hat, and, though it was cold, a white short sleeved shirt, jeans and sneakers. Further, he observed this individual “looking at [his] cell phone and then quickly looking up . . .as if he was hesitating what direction to go.” Scott testified that he entered the building and, “as soon as [defendant] observed [him], [defendant] immediately looked away and started moving away from [him],” down the hallway, up a flight of stairs and out of the building. Scott, recalling that defendant was “quickly moving” but not running, testified that he followed defendant outside and yelled “police, stop” from a distance of about 50 feet. Defendant ignored Scott as he continued to move quickly across the field outside of the PSB. When Scott caught up to defendant and asked what he was doing on campus, defendant explained that he was going to a café but could not remember its name, and pointed to a building that he also could not name. After acknowledging that he did not attend the university, defendant claimed that he was visiting his girlfriend, who was a student, but he would not give her name. Scott handcuffed defendant, informing him that he was being investigated for a recent crime, but that he was not under arrest. Scott estimated that approximately five minutes had elapsed between the time that he received the first radio transmission to the time that he questioned defendant outside of the PSB.
 

 Defendant’s primary argument is that his behavior was innocuous and, thus, not sufficient to justify his detention (see People v Morrow, 97 AD3d 991, 992 [2012]). We disagree. Unlike in Morrow, Scott was aware that an armed robbery had just taken place in close proximity to the PSB and that the perpetrator had fled into the PSB. Although defendant was not wearing a hooded sweatshirt, he otherwise closely fit the description of the assailant (see People v Johnson, 245 AD2d 112, 112-113 [1997], lv denied 91 NY2d 1008 [1998]). Defendant appeared to hesitate on which direction to walk, but quickly left the building when he saw Scott, and he failed to stop in response to Scott’s demand. In our view, this testimony supported County Court’s finding that Scott had a reasonable suspicion to detain defendant (see People v Ford, 110 AD3d 1368, 1371 [2013], lv denied 24 NY3d 1043 [2014]; People v Belle, 74 AD3d 1477, 1479-1480 [2010], lv denied 15 NY3d 918 [2010]).
 

 Defendant also contends that County Court should not have granted the People’s motion pursuant to CPL 240.40 (2) (b) (v) to compel the production of a DNA sample via a buccal swab test. The motion was supported by a State Police forensic report that DNA was present on a knife, eyeglasses and certain items of clothing—including a black hooded sweatshirt—that were found outside of the PSB. After defendant refused to submit to the buccal swab, County Court issued an order authorizing the use of reasonable force to obtain a sample, but the People decided that rather than risk injury to defendant or the correction officers, they would not use such force and no DNA evidence was obtained. Rather, County Court permitted the People to introduce evidence of defendant’s refusal to provide DNA evidence and provided a corresponding consciousness of guilt charge to the jury.
 

 Initially, we agree with County Court’s finding that the People established both a clear indication that material evidence would be found and, in light of the indictment, the requisite probable cause for the order (see Matter of Abe A., 56 NY2d 288, 291 [1982]; People v Roshia, 133 AD3d 1029, 1030 [2015], affd 28 NY3d 989 [2016]). We recognize, however, that the People’s motion was not made within 45 days of the arraignment and was thus untimely under the time constraints for discovery motions set forth in CPL 240.90 (1). Defendant was arraigned on December 24, 2013. The People received the forensic report identifying various items for possible DNA testing on February 6, 2014, within the statutory 45-day period, but they did not file a motion to compel a DNA sample until April 2, 2014. While the People failed to show good cause for the delay, there has been no showing of any prejudice to defendant from the delay itself (see People v Ruffell, 55 AD3d 1271, 1271-1272 [2008], lv denied 11 NY3d 900 [2008]; People v Lewis, 44 AD3d 422, 422-423 [2007], lv denied 9 NY3d 1035 [2008]). In our view, the court erred in failing to deny the People’s motion as untimely, but that timing error did not so infringe upon any constitutional right as to compel preclusion of the evidence concerning defendant’s refusal to provide a DNA sample (see People v Patterson, 78 NY2d 711, 716-717 [1991]; People v Finkle, 192 AD2d 783, 787-788 [1993], lv denied 82 NY2d 753 [1993]). The short delay in making the motion has no bearing on the People’s underlying entitlement to a DNA sample and no relevance to the determination of defendant’s guilt or innocence.
 

 Further, given the totality of the evidence, there was no significant probability that the jury would have acquitted defendant had the evidence of his refusals not been admitted (see People v Finkle, 192 AD2d at 788). As indicated above, Scott’s testimony placed defendant near the crime scene. The café supervisor, who was the victim of the robbery, testified that defendant worked at the café but had recently been dismissed. Another witness who attempted to stop the perpetrator from leaving the scene positively identified defendant as the robber. A search of defendant’s person revealed $121—101 $1 bills and one $20 bill. Finally, defendant also made a phone call from the jail acknowledging that he had made a mistake, “real bad and I’m going away for a while.” In total, the proof of guilt was overwhelming and there is no significant probability that the jury would have acquitted defendant had the evidence of his refusals not been admitted.
 

 McCarthy, J.P., Egan Jr., Rose and Rumsey, JJ., concur.
 

 Ordered that the judgment is affirmed.