People v Young (2018 NY Slip Op 02673)





People v Young


2018 NY Slip Op 02673


Decided on April 19, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 19, 2018

108263

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
JOHN YOUNG, Appellant.

Calendar Date: February 23, 2018

Before: Garry, P.J., Egan Jr., Lynch, Rumsey and Pritzker, JJ.


Todd G. Monahan, Schenectady, for appellant.
Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.


Lynch, J.

MEMORANDUM AND ORDER
Appeal from a judgment of the County Court of Schenectady County (Sypniewski, J.), rendered January 15, 2016, upon a verdict convicting defendant of the crimes of burglary in the third degree, criminal mischief in the second degree and petit larceny.
In July 2014, Rehabilitation Support Services (hereinafter RSS), a business located in the City of Schenectady, Schenectady County, reported a burglary to the City of Schenectady Police Department. The suspect stole $40 in petty cash and caused property damage to exterior and interior doors in the amount of $5,172.05. During the resulting police investigation, blood evidence was discovered on one of the damaged doors and sample swabs were collected and sent for DNA analysis. Defendant, who
worked for RSS in July 2014, was arrested for the RSS burglary in March 2015. After testifying before a grand jury, defendant was charged by indictment with one count each of burglary in the third degree, criminal mischief in the second degree and petit larceny. In November 2015, a jury convicted defendant of all three counts and defendant now appeals. At trial, defendant did not dispute the presence of his blood on the damaged door, but explained that the blood must have transferred there when, after being injured at work, he entered the room to get a bandage.
Initially, we find that the verdict was not against the weight of the evidence. Where, as here, a different verdict would not have been unreasonable, we must "like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" to determine whether the jury gave "the [*2]evidence the weight it should be accorded" (People v Romero, 7 NY3d 633, 634 [2006] [internal quotation marks and citations omitted]; accord People v Babcock, 152 AD3d 962, 965 [2017], lv denied 30 NY3d 947 [2017]). "A person is guilty of burglary in the third degree when he [or she] knowingly enters or remains unlawfully in a building with intent to commit a crime therein" (Penal Law § 140.20). "A person is guilty of criminal mischief in the second degree when with the intent to damage property of another person, and having no right to do so nor any reasonable ground to believe that he [or she] has such right, he [or she] damages property of another person in an amount exceeding [$1,500]" (Penal Law § 145.10). A guilty verdict of petit larceny is supported by evidence that an individual "steals property" (Penal Law § 155.25).
At trial, the project manager at RSS testified that petty cash was kept locked in a desk drawer in an office that he shared with another employee who was a supervisor at RSS (hereinafter the supervisor). The supervisor testified that on July 1, 2014, he worked from 6:00 a.m. to 5:30 p.m. and defendant worked from 7:30 a.m. to 3:00 p.m. The supervisor recalled that he was the last person to leave the building; he turned off the lights and locked the office door, and there was nothing remarkable or abnormal about the condition of his office doorway before he left the building. The next morning, when the supervisor arrived at 5:00 a.m., the building was dark but, when he turned on the lights and began to walk towards the office, he noticed that the door was open. Concerned that someone might still be in the building, he left and contacted the police. The supervisor testified that he later discovered that the office door was broken, there were red smudges in the doorway, the desk drawer was pried open and there was change strewn across the project manager's desk. The project manager testified that when he arrived at work after learning about the break-in, he discovered that approximately $40 was missing from his desk drawer. Further, the project manager testified that the amount to repair the property damaged during the break-in totaled $5,172.05.
The People submitted video images captured by a security camera located across the street from RSS and four cameras located at RSS. Both the supervisor and the project manager testified that they reviewed the footage with the police and concluded that the individual depicted on the video prying open the door to RSS resembled defendant and four other RSS employees. A police officer testified that when he arrived at RSS the morning of the break-in, he noticed what he believed to be blood on the doorway; he swabbed the substance and placed it with the evidence collected at the scene. A forensic scientist confirmed that the substance was blood and that it was sent for entry into the Combined DNA Index System. The testimony and evidence established that defendant's DNA matched the blood sample taken from the doorway at RSS after the break-in. Defendant testified that his blood may have transferred to the doorway because he cut his hand and he went into the office to get a bandage, but there was no evidence to document such an injury. In our view, "an acquittal would not have been unreasonable" (People v Danielson, 9 NY3d 342, 348 [2007]). When we give the requisite deference to the jury's ability to observe the witnesses (see People v Mateo, 2 NY3d 383, 410 [2004], cert denied 542 US 946 [2004]), our independent review of the evidence in a neutral light leads us to conclude that the verdict was not against the weight of the evidence (see People v Morrison, 127 AD3d 1341, 1343 [2015], lv denied 26 NY3d 932 [2015]).
Next, defendant claims that County Court should have stricken testimony by an investigator with the Schenectady Police Department that defendant may have intentionally misstated his name when he provided the DNA sample via buccal swab to the investigator. Indisputably, the container where the swab was placed was labeled "John T. Kelley" not "John T. Young." The investigator's testimony established that this container was immediately placed into a larger box that was labeled with defendant's correct name and date of birth. With the exception of defendant's last name, the first container was labeled with the same identifying information as [*3]was included on the larger box. During his direct examination, the investigator testified that he could "speculate" with regard to why he recorded the wrong name on the container, and the court sustained trial counsel's objection to such speculation. During cross-examination, trial counsel asked the investigator whether he wrote the wrong name because defendant "misrepresent[ed]" who he was. The investigator responded, "Probably," before immediately thereafter conceding that it "could [have] been [an error]" on his part. In context, defendant's claim that the conviction must be reversed because the investigator's testimony was unduly prejudicial is meritless. The challenged testimony established, if anything, that the investigator made a mistake, and we perceive no basis for a finding that such testimony could have "unfairly prejudice[d] [defendant] or misl[ed] the jury" (People v Scarola, 71 NY2d 769, 777 [1988]; see People v Heiserman, 127 AD3d 1422, 1423-1424 [2015]).
Next, defendant contends that County Court should not have granted the People's motion to compel the production of a DNA sample via a buccal swab test because it was made more than 45 days after defendant's arraignment (see CPL 240.90 [1]). Because the record does not indicate that defendant opposed the motion or that he objected to the court order, this contention is not preserved for our review (see CPL 470.05 [2]). In any event, in the absence of any claim or indication in the record that defendant was prejudiced by the delay, the argument is without merit (see People v Vieweg, 155 AD3d 1305, 1308 [2017], lv denied 30 NY3d 1121 [2018]; People v Ruffell, 55 AD3d 1271, 1272 [2008], lv denied 11 NY3d 900 [2008]).
Defendant next argues that County Court failed to properly evaluate whether a juror was "grossly unqualified" (CPL 270.35 [1]). Generally, a grossly unqualified juror — such as a juror who falls asleep and misses a significant portion of the trial — should be replaced (see People v Robinson, 121 AD3d 1179, 1181 [2014]; People v Buel, 53 AD3d 930, 931 [2008]). To determine whether a juror should be replaced, the court should "conduct[] a probing, tactful inquiry into the specific circumstances" to assess whether he or she "possesses a state of mind which would prevent the rendering of an impartial verdict (People v Reichel, 110 AD3d 1356, 1358 [2013] [internal quotation marks, brackets and citations omitted], lv denied 22 NY3d 1090 [2014]). The record here confirms that twice during the trial, a juror was observed with her eyes closed. Each time, counsel requested a bench conference and all agreed that it was sufficient for the court to allow a break in the trial and to remind all the jurors that it was important to pay attention and focus on the evidence. Because defendant consented to this resolution during the trial and failed to move to discharge the juror, defendant has not preserved this issue for our review (see People v Pearson, 151 AD3d 1455, 1458 [2017], lv denied 30 NY3d 982 [2017])[FN1]. Similarly, our review of the record confirms that defendant's claim that the court erred in its response to a jury note is not preserved for our review (see People v LaDuke, 140 AD3d 1467, 1469 [2016]).
In our view, defendant received the effective assistance of counsel. The standard under the NY Constitution — which is more stringent than the federal standard — requires defendant to establish that trial counsel "failed to provide meaningful representation and thus deprived defendant of a fair trial" (People v Clark, 28 NY3d 556, 562, 565 [2016]). "An ineffective assistance of counsel claim will fail so long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that [the] attorney provided meaningful representation" (People v Rosario, 157 AD3d 988, 993 [2018] [*4][internal quotation marks and citations omitted]). "Meaningful representation simply requires that defense counsel's efforts reflect that of a reasonably competent attorney" (People v Coley, 129 AD3d 1327, 1329 [2015] [citations omitted], lv denied 26 NY3d 927 [2015]).
Defendant's claim is based on trial counsel's failure to preserve certain arguments and the decision to call a witness who, in defendant's view, offered no productive testimony on his behalf. Although arguably, with hindsight, one could conclude that trial counsel could have been more effective, this is not the standard (see People v Benevento, 91 NY2d 708, 712 [1998]; People v Bullock, 145 AD3d 1104, 1107 [2016]). Rather, when we review the record as a whole, we find that trial counsel had a "reasonable and legitimate strategy under the circumstances and evidence presented," and we therefore conclude that defendant has not established that he received ineffective assistance (People v Perry, 148 AD3d 1224, 1224-1225 [2017] [internal quotation marks and citation omitted]; see People v Caban, 5 NY3d 143, 152 [2005]).
Finally, we reject defendant's claims that County Court abused its discretion by failing to allow him to participate in the judicial diversion program and that the sentence imposed was harsh and excessive. First, because defendant never requested to participate in judicial diversion, he may not now fault the court for failing to exercise its discretionary authority to permit such participation (see CPL 216.05 [1]). Further, as the court noted, defendant failed to demonstrate that he sought or received any benefit from programs offered in the past; thus, assuming without deciding that defendant was eligible for judicial diversion, the record fails to "reflect any basis upon which to believe that the court would have deemed it to be appropriate in view of defendant's extensive criminal history" (People v Driscoll, 147 AD3d 1157, 1159 [2017], lv denied 29 NY3d 1078 [2017]). As noted by County Court, defendant's prior criminal history, dating from 1975 to 2009, includes five felony convictions and he had "basically . . . been a burglar [his] entire life." In our view, we do not find that defendant has shown any "extraordinary circumstances or an abuse of discretion warranting modification" of the sentence imposed (People v Meddaugh, 150 AD3d 1545, 1548 [2017]).
Garry, P.J., Egan Jr., Rumsey and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: To the extent that defendant claims that this issue was preserved by the CPL 330.30 motion to set aside the verdict, we disagree (see People v Johnson, 92 NY2d 976, 978 [1998]).