▰▰ The People of the State of New York, Respondent, v Ramy M. Mohamed, Appellant. [46 NYS3d 111]—

▰▰▰▰▰▰▰▰▰▰▰

Appeal by the defendant from a judgment of the Supreme Court, Queens County (Latella, J.), rendered February 25, 2013, convicting him of attempted burglary in the second degree and criminal mischief in the fourth degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, and a new trial is ordered.

The defendant was convicted after a jury trial of attempted burglary in the second degree and criminal mischief in the fourth degree. The convictions arose from an incident, allegedly occurring in the early morning hours of May 11, 2012, when the defendant entered the gated backyard of a multi-family home in Queens. One of the complainants testified that she was awakened by scratching sounds near the living room window that faced the backyard of the apartment she shared with her husband. When she opened the blinds, she observed the defendant standing on a table, pulling and bending down the corner of the screen that was outside the window. After she screamed for help, her husband opened the window and grabbed the defendant while she called the 911 emergency number. The defendant was able to pull away and ran back

around the house, jumping over a seven-foot gate, to get to the front yard, where the husband apprehended and restrained him until police arrived. The screen was later found on the ground with an eight-inch gash in the top right corner.

At trial, the defendant testified that he was under the influence of alcohol and marijuana at the time of the incident and was only looking for a secluded place to sober up at the time he entered the backyard through an unlocked gate. After entering, the defendant testified that he saw the window and only peered inside to make sure no one could see him resting.

The defendant contends that the evidence was legally insufficient to support his convictions and that the verdict was against the weight of the evidence. Viewing the evidence in the light most favorable to the People (*see People v Contes*, 60 NY2d 620, 621 [1983]), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (*see People v Danielson*, 9 NY3d 342 [2007]), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (*see People v Mateo*, 2 NY3d 383, 420 [2004]; *People v Bleakley*, 69 NY2d 490, 495 [1987]). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (*see People v Romero*, 7 NY3d 633 [2006]).

A *Sandoval* hearing (*see People v Sandoval*, 34 NY2d 371 [1974]) was held prior to trial, after which the Supreme Court ruled, in part, that, should the defendant testify on his own behalf, the People would be permitted to inquire about his conviction of petit larceny on March 15, 2012, and his State of California conviction of burglary in the third degree on April 30, 2008. Specifically, the court ruled that the People were limited to only eliciting testimony that the defendant had previously been convicted of a misdemeanor and felony, respectively, on those dates.

On cross-examination, the defendant testified that there were times in the past when he had been intoxicated and "ended up in the bushes" or "in the park" and that it was possible for a drunk person to end up in someone's backyard. The prosecutor questioned the defendant as to other places he had been in the past, specifically asking if he had ever "enter[ed] a building that [he] had no permission to go?" The defendant initially denied entering a building, but after further questioning, which the Supreme Court allowed over defense counsel's objection, he admitted that he had walked into a store that was closed but

had people in it. The prosecutor pressed further, and later asked the defendant, "Have you ever walked into a building that was completely closed to the public with no people inside of that building?" and the defendant responded, "I don't recall." The prosecutor then asked if he had been convicted of a felony and the defendant replied affirmatively. The record reflects more than a half a dozen occasions when the People clearly violated the court's *Sandoval* ruling by repeatedly questioning the defendant concerning the underlying facts of his prior burglary conviction. We agree with the defendant that the court erred in allowing the prosecutor to elicit testimony from the defendant that revealed some of the critical underlying facts from his prior burglary conviction (*see People v Sandoval*, 34 NY2d 371 [1974]).

Defendants who take the witness stand, like other witnesses, place their credibility in issue and, thus, may be cross-examined about past criminal or immoral acts relevant to their credibility (*see People v Fardan*, 82 NY2d 638, 646 [1993]). The policy underlying *Sandoval* is that the accused has the right to make an informed choice concerning whether he or she should take the witness stand (*see id.* at 646; *People v Fisher*, 104 AD3d 868, 871 [2013]; *People v Grant*, 234 AD2d 475, 475-476 [1996]; *People v Powe*, 146 AD2d 718, 719 [1989]). Thus, in the interest of fairness, a trial court's authority to change its *Sandoval* ruling is limited once the defendant has decided to testify in good-faith reliance on the court's pretrial ruling (*see People v Fardan*, 82 NY2d 638 [1993]; *People v Fisher*, 104 AD3d 868 [2013]; *People v Grant*, 234 AD2d 475 [1996]). The defendant in this case was denied that right when, after making what he believed to be an informed judgment and taking the witness stand, the Supreme Court implicitly changed the ruling upon which he relied by allowing the prosecutor to continue her course of prejudicial questioning despite repeated objections from defense counsel. The court's implicit change in its ruling after the defendant had already taken the witness stand deprived the defendant of a fair trial (*see People v Fisher*, 104 AD3d 868 [2013]; *People v Grant*, 234 AD2d 475 [1996]), and the defendant's subsequent motion for a mistrial should have been granted.

Contrary to the People's contention, the defendant did not open the door to questioning about his prior burglary conviction. When a defendant testifies to facts that are in conflict with the precluded evidence, he or she opens the door to questioning regarding that issue, and he or she is properly subject to impeachment by the prosecution's use of the

otherwise precluded evidence (see *People v Fardan*, 82 NY2d 638 [1993]). The defendant's testimony that he had passed out in bushes and parks while intoxicated on prior occasions did not mislead the jury, and it was not in conflict with the facts of his underlying conviction (see *id.*; *People v Fisher*, 104 AD3d 868 [2013]; *People v Grant*, 234 AD2d 475 [1996]).

The Supreme Court's error regarding the *Sandoval* ruling cannot be considered harmless. Such "error is only harmless when there is overwhelming proof of the defendant's guilt and no significant probability that the jury would have acquitted the defendant were it not for the error" (*People v Santiago*, 17 NY3d 661, 673-674 [2011]; see *People v Crimmins*, 36 NY2d 230, 242 [1975]). Here, the prosecutor's improper questioning of the defendant concerning his prior burglary conviction was not harmless, in view of the importance of the defendant's credibility and the less than overwhelming proof of his guilt. Moreover, it cannot be said that there was no significant probability that the jury would have acquitted the defendant if it had not been for the error (see *People v Loiseau*, 140 AD3d 1190, 1191 [2016]; *People v Wilkens*, 177 AD2d 678, 679 [1991]; cf. *People v Borgella*, 144 AD3d 1048 [2d Dept 2016]). Accordingly, the judgment must be reversed and a new trial ordered.

In light of our determination, we need not reach the defendant's remaining contentions. Dillon, J.P., Roman, Miller and LaSalle, JJ., concur.