■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v URBAN FERMIN, Appellant. [55 NYS3d 286]—

Appeal by the defendant from a judgment of the Supreme

Court, Queens County (Holder, J.), rendered March 18, 2013, as amended March 25, 2013, convicting him of attempted murder in the first degree (two counts), attempted murder in the second degree (two counts), reckless endangerment in the first degree, attempted assault in the first degree (two counts), attempted aggravated assault on a police officer (two counts), burglary in the first degree, robbery in the first degree (two counts), robbery in the second degree (two counts), criminal possession of a weapon in the second degree (two counts), grand larceny in the fourth degree, criminal possession of stolen property in the fourth degree, criminal possession of stolen property in the fifth degree (two counts), unauthorized use of a vehicle in the first degree, and unlawful fleeing a police officer in a motor vehicle in the third degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment, as amended, is modified, on the law, by vacating the convictions of attempted murder in the second degree, vacating the sentences imposed thereon, and dismissing those counts of the indictment; as so modified, the judgment, as amended, is affirmed.

The defendant, who was tried together with a codefendant, stole a car, committed a home invasion, robbed a woman on the street, and then led the police on a car chase through South Ozone Park and South Jamaica, Queens, while the codefendant shot at the police out the car window. The defendant was apprehended on foot after the men abandoned the car; the codefendant was arrested at home later the same day. After a trial, the jury found the defendant guilty of numerous crimes.

The record does not support the defendant's claim that a *Batson* violation occurred in this case (*see Batson v Kentucky*, 476 US 79 [1986]). Where a party contends that opposing counsel has used peremptory challenges in a discriminatory manner, the trial court must engage in a three-step process for evaluating that contention: " 'The first step requires that the moving party make a prima facie showing of discrimination in the exercise of peremptory challenges; the second step shifts the burden to the nonmoving party to provide race-neutral reasons for each juror being challenged; and the third step requires the court to make a factual determination as to whether the race-neutral reasons are merely a pretext for discrimination' " (*People v Jones*, 139 AD3d 878, 879 [2016], quoting *People v Carillo*, 9 AD3d 333, 334 [2004]; *see Batson v Kentucky*, 476 US 79 [1986]; *People v Smocum*, 99 NY2d 418, 421-422 [2003]; *People v Allen*, 86 NY2d 101, 104 [1995]). Thus, a party asserting a *Batson* challenge " 'should articulate and

develop all of the grounds supporting the claim, both factual and legal, during the colloquy in which the objection is raised and discussed' " (*People v Gamble*, 137 AD3d 1053, 1054 [2016], quoting *People v Childress*, 81 NY2d 263, 268 [1993]). Here, the Supreme Court correctly determined that the defendant failed to make the requisite prima facie showing of discrimination, as he failed to make a record sufficient to evaluate his claim that the People used peremptory challenges in a discriminatory manner. Accordingly, the burden did not shift to the prosecution to respond with a neutral explanation.

Similarly unavailing is the defendant's contention regarding an ex parte discussion of a possible material witness order for a prosecution witness. Pursuant to CPL article 620, either the prosecution or the defendant may seek an order adjudicating a person a material witness and fixing bail to secure that person's attendance at trial (*see* CPL 620.10, 620.30). " 'Neither the defendant nor the prosecution is entitled to notice of an application for a material witness hearing, and neither party has standing to contest or to participate in a hearing on an application made by the other' " (*People v Hamilton*, 272 AD2d 553, 553 [2000], quoting *People v Bond*, 264 AD2d 851, 851 [1999], *revd on other grounds* 95 NY2d 840 [2000]; *see People v Owens*, 235 AD2d 268 [1997]; *People v Turaine*, 227 AD2d 299 [1996]; *People v Brown*, 195 AD2d 967 [1993]; *see also People v Pilgrim*, 101 AD3d 435, 435-436 [2012]; *People v Mauro*, 49 AD3d 268, 269 [2008]). Here, the record demonstrates that the sole issue considered by the Supreme Court at the ex parte discussion was whether an eyewitness was willing to attend trial voluntarily or should be compelled to attend via a material witness order. Since this discussion was ministerial in nature and bore no relationship to the merits of the charges against the defendant, his exclusion did not have a substantial relationship to his ability to defend against those charges (*see People v Turaine*, 227 AD2d at 299). Likewise, the defendant has not established that he was entitled to a copy of the transcript of the discussion or the submissions in support of the prosecution's earlier material witness application relating to this witness (*see generally People v Owens*, 235 AD2d at 268).

In addition, although the defendant established that the prosecution inadvertently delayed in disclosing certain information regarding threats allegedly made against a prosecution witness in violation of *People v Rosario* (9 NY2d 286 [1961]), he failed to demonstrate that he was substantially prejudiced by the late disclosure, as he extensively covered the same subject matter in his cross-examination of the witness (*see* CPL 240.75;

*People v Martinez*, 71 NY2d 937, 940 [1988]; *People v Rizzo*, 142 AD3d 1187 [2016]; *People v Aviles*, 119 AD3d 871 [2014]).

The defendant has largely preserved for appellate review his contention that the prosecutor engaged in misconduct during summation (*see People v Beckham*, 142 AD3d 556 [2016]; *People v Marcus*, 112 AD3d 652, 653 [2013]; *People v Rogers*, 92 AD3d 903, 904 [2012]; *People v Martinez*, 69 AD3d 958, 959 [2010]; *People v Montalvo*, 34 AD3d 600, 601 [2006]). However, the majority of the prosecutor's argument fell within the permitted scope of summation and constituted fair comment upon the evidence or a fair response to the defense summation (*see People v Ashwal*, 39 NY2d 105, 109 [1976]; *People v White*, 5 AD3d 511 [2004]). To the limited extent that the prosecutor's remarks may have exceeded those bounds, the Supreme Court promptly addressed the defendant's objections and issued appropriate curative instructions, thereby alleviating any potential prejudice to the defendant. Furthermore, the defendant's contention that the prosecutor improperly vouched for the police witnesses is unpreserved for appellate review and, in any event, to the extent that any of the comments were improper, they were not so flagrant or pervasive as to deny the defendant a fair trial (*see People v Taylor*, 120 AD3d 519, 521 [2014]; *People v Persaud*, 98 AD3d 527, 529 [2012]).

We find unpersuasive the defendant's contention that he was entitled to an adverse inference charge regarding certain lost evidence. In general, the People have "an affirmative obligation to preserve all discoverable evidence within their possession" (*People v James*, 93 NY2d 620, 644 [1999]). However, " '[t]he loss or destruction of evidence prior to trial does not necessarily require imposition of a sanction' " (*People v Jackson*, 133 AD3d 883, 884 [2015], quoting *People v Seignious*, 114 AD3d 883, 884 [2014]). " 'The court's determination of an appropriate sanction must be based primarily [upon] the need to eliminate prejudice to the defendant' " (*People v Jackson*, 133 AD3d at 884, quoting *People v Rice*, 39 AD3d 567, 568-569 [2007]; *see People v Bernard*, 100 AD3d 916, 917 [2012]). The court should also consider " 'the proof available at trial, the significance of the missing evidence and whether the loss was intentional or inadvertent' " (*People v Seignious*, 114 AD3d at 884, quoting *People v Haupt*, 71 NY2d 929, 931 [1988]). Here, the People were unable to produce evidence which had been stored in a warehouse due to damage to the building caused by Hurricane Sandy. The unavailable evidence, consisting of various items of clothing recovered from the area of the defendant's arrest, had already been tested for DNA, and the test results were made

available to the defendant. Moreover, the crimes at issue here occurred in February 2010, and Hurricane Sandy did not occur until October 2012, more than 2½ years later, and there is no indication that the defendant requested either access to that evidence or the performance of any further testing of it during that lengthy interval. Most significantly, there was no indication of any bad faith on the part of the prosecution, notwithstanding the defendant's argument that greater care should have been taken in storing the evidence or greater efforts should have been made to recover it (*see People v Haupt*, 71 NY2d at 931). Since the loss of this evidence due to a natural disaster did not prejudice the defendant or prevent him from presenting a defense, the Supreme Court properly declined to give an adverse inference instruction and instead elected to simply instruct the jury that it could consider the prosecution's loss of the evidence in its deliberations (*see People v Ignacio*, 148 AD3d 824 [2017]; *People v Hester*, 122 AD3d 880, 880-881 [2014]).

The defendant's challenge to certain testimony regarding the DNA evidence is unpreserved for appellate review and, in any event, without merit (*see People v John*, 27 NY3d 294, 313-315 [2016]; *People v Brown*, 13 NY3d 332, 340 [2009]; *People v Henderson*, 142 AD3d 1104 [2016]; *People v Beckham*, 142 AD3d 556 [2016]; *People v Hernandez*, 140 AD3d 1187 [2016]; *People v Kelly*, 131 AD3d 484, 486 [2015]; *People v Fernandez*, 115 AD3d 977, 978-979 [2014]).

However, the defendant's convictions of two counts of attempted murder in the second degree must be vacated. Where multiple counts, including inclusory concurrent counts, are submitted to a jury, "[a] verdict of guilty upon the greatest count submitted is deemed a dismissal of every lesser count submitted" (CPL 300.40 [3] [b]). A count is an inclusory concurrent count where (1) it is "impossible to commit the greater crime without concomitantly committing the lesser offense by the same conduct" and (2) there is "a reasonable view of the evidence to support a finding that the defendant committed the lesser offense but not the greater" (*People v Miller*, 6 NY3d 295, 302 [2006]). As the People correctly concede, the counts of attempted murder in the second degree were inclusory concurrent counts of attempted murder in the first degree (*see id.* at 300-302; *People v Rosas*, 30 AD3d 545, 546 [2006], *affd* 8 NY3d 493 [2007]); thus, the defendant's convictions of attempted murder in the second degree and the sentences imposed thereon must be vacated and those counts of the indictment must be dismissed.

The defendant's remaining contentions are without merit. Mastro, J.P., Leventhal, Hall and Sgroi, JJ., concur.