People v Walters (2019 NY Slip Op 03632)





People v Walters


2019 NY Slip Op 03632


Decided on May 8, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 8, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
LEONARD B. AUSTIN
JEFFREY A. COHEN
ANGELA G. IANNACCI, JJ.


2015-02515
 (Ind. No. 3164/13)

[*1]The People of the State of New York, respondent,
v
Darryl Walters, appellant.


Paul Skip Laisure, New York, NY (Kathleen Whooley of counsel), for appellant.
John M. Ryan, Acting District Attorney, Kew Gardens, NY (John M. Castellano, Johnnette Traill, and Nancy Fitzpatrick Talcott of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (James P. Griffin, J.), rendered March 12, 2015, convicting him of burglary in the second degree, grand larceny in the third degree, and criminal mischief in the fourth degree, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is reversed, on the law, and the matter is remitted to the Supreme Court, Queens County, for a new trial.
The defendant contends that the Supreme Court violated his Sixth Amendment right to confrontation by admitting into evidence records of a DNA analysis performed by the Office of the Chief Medical Examiner of the City of New York. This contention is unpreserved for appellate review (see CPL 470.05[2]; People v Fermin, 150 AD3d 876; People v Castro, 149 AD3d 862, 865; People v Abuziyad, 136 AD3d 837). Defense counsel did not object to the admission of either the records or the accompanying testimony on the basis that their admission violated the Confrontation Clause (see People v Webb, 163 AD3d 880; People v Gibson, 163 AD3d 586; People v Bones, 17 AD3d 689). In any event, the defendant's contention is without merit. The testifying criminalist performed her own analysis of the DNA profiles and issued the final report, and her testimony was the subject of cross-examination (see People v John, 27 NY3d 294, 315; People v Castro, 149 AD3d 862; People v Beckham, 142 AD3d 556; People v Abuziyad, 136 AD3d 837).
Defense counsel's failure to object to the admission of the DNA evidence did not constitute ineffective assistance of counsel since that evidence was properly admitted and any objection thereto would have had little or no chance of success (see People v Rodriguez, 31 NY3d 1067, 1068; People v Abuziyad, 136 AD3d 837; People v Hampton, 81 AD3d 974, 975).
Furthermore, defense counsel's failure to oppose the People's motion to compel the defendant to submit to a buccal swab did not constitute ineffective assistance of counsel. While it appears from the record that the People's motion to compel the defendant to submit to a buccal swab for DNA testing was untimely pursuant to CPL 240.90, and the People failed to adequately explain the delay (see People v Smith, 168 AD3d 885), the error did not implicate the defendant's constitutional rights (see People v Cox, 161 AD3d 1100, 1101; People v Vieweg, 155 AD3d 1305, 1308).
Prior to the trial, the Supreme Court conducted a Sandoval hearing (see People v Sandoval, 34 NY2d 371), after which the court ruled that, should the defendant testify on his own behalf, the People would be permitted to ask whether he had two prior felony convictions. However, the People were not permitted to elicit the underlying facts of either of those crimes.
On direct examination, the defendant testified about a 2008 incident in which he ran away from police officers and, subsequently, was badly beaten by those officers. The defendant testified that he was bleeding, and when he was taken to the police station, he was given clothes to change into, his bloody clothing was taken away, and one of the officers who had beaten the defendant threatened him by saying that the police had his DNA and they could use it against him. The defendant also testified that he had a pending civil lawsuit against the police department based on this alleged beating. On cross-examination, the prosecutor asked the defendant whether in 2008 the officers were "coming after" him to arrest him, and the defendant testified that he had been pursued for being a "black man [running]," but once "they got [his] identification, they found out who [he] was" and that "community supervision wanted to hold a hearing with [him]." Without seeking an amendment of the Supreme Court's Sandoval ruling, the prosecutor then asked whether he was being arrested that day in 2008 "because there was a DNA match of [him] committing a burglary." Defense counsel objected, the objection was overruled, and the defendant denied that this was true. The prosecutor persisted in that line of inquiry, and asked whether the defendant had been convicted of burglary in the third degree in 2009. The defendant responded that "[y]es [he] was convicted of a case in 2008." Nonetheless, without asking for a modified Sandoval ruling, the prosecutor brought up, no less than six times, that the 2008 conviction was for burglary and involved DNA, going so far to ask the defendant to "explain" the facts of his 2008 conviction, with the court instructing the defendant to do so. In one instance, after asking the defendant to confirm that he was charged in the instant case with burglary in the second degree, the prosecutor remarked, in effect, that the instant crime was "the same type of DNA hit that happened back in 2008."
Defendants who take the witness stand, like other witnesses, place their credibility in issue and, thus, may be cross-examined about past criminal or immoral acts relevant to their credibility (see People v Fardan, 82 NY2d 638, 646). The policy underlying Sandoval is that the accused has the right to make an informed choice concerning whether he or she should take the witness stand (see People v Fardan, 82 NY2d at 646; People v Mohamed, 145 AD3d 1038, 1040).
The defendant here was denied that right when, after making what he believed to be an informed judgment and taking the witness stand, the Supreme Court implicitly changed the ruling upon which he relied by allowing the prosecutor to continue her course of prejudicial questioning despite objections from defense counsel. The court's implicit change in its ruling after the defendant had already taken the witness stand deprived the defendant of a fair trial and the defendant's subsequent motion for a mistrial should have been granted (see People v Mohamed, 145 AD3d at 1040).
Contrary to the People's contention, the defendant did not open the door to questioning about the specific facts of his prior burglary conviction. "When a defendant testifies to facts that are in conflict with the precluded evidence, he or she opens the door to questioning regarding that issue, and he or she is properly subject to impeachment by the prosecution's use of the otherwise precluded evidence" (id. at 1040-1041). Here, the defendant never denied that he had two felony convictions, nor did he deny that one of those convictions was for burglary in the third degree. Furthermore, if the prosecutor believed that the defendant's testimony on direct examination necessitated questioning in violation of the Supreme Court's Sandoval ruling, the prosecutor could have requested that the court expand its ruling (see People v Julien, 182 AD2d 642, 642). The prosecutor did not do so. Moreover, even if the People were entitled, without the court's permission, to elicit from the defendant an admission that his DNA had been collected in connection with his commission of a prior offense, in order to refute his testimony regarding the source of the DNA evidence, there was no valid reason for the prosecutor to refer to the prior offense as a "residential burglary" on at least three occasions during cross-examination.
The Supreme Court's error regarding the Sandoval ruling cannot be considered harmless. Such "error is only harmless when there is overwhelming proof of the defendant's guilt and no significant probability that the jury would have acquitted the defendant were it not for the error" (People v Santiago, 17 NY3d 661, 673-674; see People v Crimmins, 36 NY2d 230, 242). "[C]ross-examination with respect to crimes or conduct similar to that of which the defendant is [*2]presently charged may be highly prejudicial, in view of the risk, despite the most clear and forceful limiting instructions to the contrary, that the evidence will be taken as some proof of the commission of the crime charged rather than be reserved solely to the issue of credibility" (People v Sandoval, 34 NY2d at 377). Here, the prosecutor's improper questioning of the defendant concerning his prior burglary conviction was not harmless, in view of the importance of the defendant's credibility and that it would be difficult for the jury in this residential burglary case involving DNA evidence to ignore the fact that the defendant had a prior arrest and conviction for a residential burglary involving DNA evidence. Despite the "clear and forceful limiting instructions to the contrary," it was probable that the jury drew an improper conclusion of propensity (id.). While evidence had been presented as to the defendant's DNA profile matching a DNA profile developed from blood found at the scene of the instant burglary, had the jurors not heard the prejudicial details of the defendant's prior criminal record, they may have been more receptive to his testimony providing an alternative explanation for why his DNA was found at the scene (see People v Mohamed, 145 AD3d at 1041; People v Loiseau, 140 AD3d 1190, 1191).
Accordingly, the judgment should be reversed and a new trial ordered.
RIVERA, J.P., AUSTIN, COHEN and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court