People v George (2021 NY Slip Op 06006)





People v George


2021 NY Slip Op 06006


Decided on November 4, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:November 4, 2021

111065
[*1]The People of the State of New York, Respondent,
v
Dezra George, Appellant.

Calendar Date:September 8, 2021

Before:Garry, P.J., Clark, Aarons, Reynolds Fitzgerald and Colangelo, JJ.

Kathy Manley, Selkirk, for appellant.
J. Anthony Jordan, District Attorney, Fort Edward (Taylor Fitzsimmons of counsel), for respondent.



Colangelo, J.
Appeal from a judgment of the County Court of Washington County (McKeighan, J.), rendered February 28, 2019, upon a verdict convicting defendant of the crime of promoting prison contraband in the first degree.
In August 2018, defendant was charged by indictment with promoting prison contraband in the first degree based upon an incident that occurred in September 2017 while he was incarcerated. During the incident, defendant was slashing at another incarcerated individual with a sharpened piece of metal contraband, causing that person to bleed from his face, head and shoulder. Prior to trial, defendant demanded that the People stipulate that no prior bad act evidence would be used against him in their direct case or on cross-examination if he elected to testify, and he alternatively requested Sandoval and Molineux hearings. Thereafter, the People gave notice that they sought to introduce, on their direct case, evidence of defendant's prior murder conviction and five disciplinary infractions, but indicated that they would withdraw their application if defendant would stipulate to being an incarcerated individual on the date in question, an element of the crime of promoting prison contraband in the first degree (see Penal Law § 205.25 [2]). The People also sought a Sandoval compromise that would permit them to cross-examine defendant as to only whether he was previously convicted of a felony and that is why he was incarcerated at the time of the subject incident. At trial, prior to the start of the People's case, defendant stipulated that he was an incarcerated individual in a correctional facility on the date of the incident. In turn, the People withdrew their Sandoval/Molineux applications. County Court then warned defendant and defense counsel that "[i]f somebody starts getting into an area that opens the door, there is going to be [an] application about that and I'll rule accordingly."
The People then elicited testimony from an officer and a sergeant employed by the Department of Corrections and Community Supervision as to, among other things, the incident, and the injuries sustained by the incarcerated individual from defendant's use of the sharpened piece of metal. In addition, the People introduced the sharpened piece of metal and photographs of the injured person into evidence. After the People rested, and prior to defendant's testimony, the court advised defendant, "You've listened to the rule of the [c]ourt relative to Sandoval and Molineux, things that can come in. You need to understand [that,] if you make a statement, the People can argue that it opens the door to certain proof that may have been precluded previously." Following defendant's testimony, the People argued that defendant portrayed himself as a victim of retaliation and as a rule follower while in prison and he therefore opened the door to cross-examination as to his prior disciplinary violations. The People were then given a limited opportunity to cross-examine [*2]defendant as to whether he had infractions of rules while in a prison facility. Following the jury trial, defendant was convicted as charged. Defendant was then sentenced, as a second felony offender, to a prison term of 3½ to 7 years. Defendant appeals.
Defendant contends that County Court erred in allowing the People to cross-examine him about whether he had committed disciplinary infractions while in prison. We disagree. "'When a defendant testifies to facts that are in conflict with the precluded evidence, he or she opens the door to questioning regarding that issue, and he or she is properly subject to impeachment by the prosecutor's use of the otherwise precluded evidence'" (People v Walters, 172 AD3d 916, 919 [2019], lv denied 34 NY3d 939 [2019], quoting People v Mohamed, 145 AD3d 1038, 1040-1041 [2016], lv denied 29 NY3d 1083 [2017]). A trial court has the discretion to decide "'door opening' issues 'by considering whether, and to what extent, the evidence or argument said to open the door is incomplete and misleading, and what if any otherwise inadmissible evidence is reasonably necessary to correct the misleading impression'" (People Parada, 67 AD3d 581, 582 [2009], affd 17 NY3d 501 [2011], quoting People v Massie, 2 NY3d 179, 184 [2004]).
Defendant testified, among other things, that prior to the September 2017 incident, he had previous interactions with the correction officer and sergeant who testified for the People. He refused the officer's offer to assault an incarcerated individual who was in prison for a sexual offense in exchange for a television and a hot pot. On another occasion, the sergeant choked him because he refused the sergeant's request to "sign-in to protective custody" to avoid being "cut" by another incarcerated individual. County Court then permitted the People to ask a single question, without dates or details, as to whether defendant had committed disciplinary infractions while in prison to correct the incomplete and misleading impression that defendant was a victim of retaliation and committed no infractions while in prison. We find that the court providently exercised its discretion in finding that defendant's testimony opened the door to limited inquiry about whether he committed prior disciplinary infractions (see People v Reid, 19 NY3d 382, 388-389 [2012]; People v Gumbs, 195 AD3d 450, 451 [2021], lv denied 37 NY3d 992 [2021]).
Turning to the issue of preindictment delay,[FN1] defendant correctly concedes that the issue is unpreserved due to defense counsel's failure to move to dismiss the indictment on this ground. Defendant urges this Court to exercise our interest of justice jurisdiction to take corrective action or, alternatively, find that the failure to make such a motion deprived defendant of the effective assistance of counsel. Because defendant's ineffective assistance of counsel claim involves a matter not reflected in, or fully explained by, the record, it is not reviewable on direct [*3]appeal (see People v Maffei, 35 NY3d 264, 269-270 [2020]; People v Rivera, 71 NY2d 705, 709 [1988]). The only reasons given for the delay are set forth in the People's appellate brief, and the only allegations of prejudice are set forth in defendant's brief. Further, even if the issue of preindictment delay had been preserved, we find it to be without merit. This Court has held that, in the absence of any claim of prejudice, a one-year preindictment delay does not constitute a denial of a defendant's due process rights (see People v Decker, 159 AD3d 1190, 1192 [2018], lv denied 31 NY3d 1116 [2018]). The record is devoid of any facts that show how defendant was prejudiced. The record reflects that defendant was incarcerated for an unrelated crime for the one year and two days between the commission of the instant offense and the time he was arraigned on the indictment. As such, "the delay caused no further curtailment of his freedom" (People v Richardson, 298 AD2d 711, 712 [2002]). In addition, the underlying charge, which involved "the security of the detention facility and the safety of the correctional employees and other [incarcerated individuals]" is serious in nature (People v Diaz, 277 AD2d 723, 724-725 [2000], lv denied 96 NY2d 758 [2001]).
Garry, P.J., Clark, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Defendant was arraigned on the indictment one year and two days after commission of the incident.