People v Heiserman (2022 NY Slip Op 02588)

People v Heiserman

2022 NY Slip Op 02588

Decided on April 21, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 21, 2022

112214
[*1]The People of the State of New York, Respondent,
v
Michael Heiserman, Appellant.

Calendar Date:February 17, 2022

Before:Garry, P.J., Lynch, Pritzker, Colangelo and McShan, JJ.

G. Scott Walling, Slingerlands, for appellant.
Jonathan J. Miller, Acting District Attorney, Malone (Jennifer M. Hollis of counsel), for respondent.

Pritzker, J.
Appeal from a judgment of the County Court of Franklin County (Champagne, J.), rendered September 4, 2019, upon a verdict convicting defendant of the crime of assault in the second degree.
In February 2019, defendant was charged by indictment with assault in the second degree stemming from allegations that, while being processed at the Franklin County Jail for harassment, he struck a police sergeant intentionally causing him injury. After a jury trial, defendant was convicted as charged and thereafter sentenced, as a second felony offender, to a prison term of five years, to be followed by five years of postrelease supervision. Defendant appeals.
Defendant argues that County Court erred in denying his request for a jury charge on the defense of justification. In a criminal action, "[i]n judging whether to accede to a defendant's request to charge an affirmative defense, a court is bound to view the evidence in the light most favorable to the defendant . . . . The charge must be given if there is evidence reasonably supportive of the defense, even if there is other evidence which, if credited, would negate it" (People v McKenzie,19 NY3d 463, 466 [2012] [citation omitted]; see People v J.L., 36 NY3d 112, 119 [2020]; People v Vega, 33 NY3d 1002, 1004-1005 [2019]). "The rule serves as a bulwark against judicial intrusion into the fact-finding province of the jury" (People v J.L., 36 NY3d at 121).
Specific to the affirmative defense of justification, as relevant here, "[a] person may . . . use physical force upon another person when and to the extent he or she reasonably believes such to be necessary to defend himself [or] herself
. . . from what he or she reasonably believes to be the use or imminent use of unlawful physical force by such other person" (Penal Law § 35.15 [1]; see People v Goetz, 68 NY2d 96, 105-106 [1986]). This defense involves both subjective and objective elements whereby the "determination of reasonableness must be based on the circumstances facing a defendant or his [or her] situation" (People v Goetz, 68 NY2d at 114 [internal quotation marks and citations omitted]; see People v Young, 33 AD3d 1120, 1122-1123 [2006], lvs denied 8 NY3d 921, 925, 929 [2007]). It is well settled that a defendant charged with assault of a police officer or a correction officer can, under certain circumstances, assert self-defense where the officer uses excessive force (see e.g. People v Stevenson, 31 NY2d 108, 112 [1972]; People v Banyan, 187 AD3d 643, 644 [2020], lv denied 36 NY3d 1049 [2021]; People v Brown, 169 AD3d 1488, 1489 [2019], lv denied 35 NY3d 1064 [2020]; compare Penal Law § 35.27).
Here, since justification is a complete defense, and given the overwhelming evidence that defendant committed the crime of assault, the instruction is of crucial importance. Most notably, the People introduced into evidence a video recording of the assault, in which defendant can clearly be seen punching a police sergeant after defendant is [*2]sprayed in the face with pepper spray. Testimony revealed, and the video corroborated, that the pepper spray was deployed because defendant was refusing to take off his shoes and change into footwear provided by the jail so that an officer could finish searching him before bringing him into the jail. However, the video depicts a very brief time period between the initial directive for defendant to remove his footwear and the deployment of the pepper spray.[FN1] Based on this fact, combined with other circumstances surrounding the incident, we find that there is a reasonable view of the evidence that the use of the pepper spray constituted excessive force in this scenario.[FN2] Thus, when "viewing the evidence in the light most favorable to . . . defendant" (People v Johnson, 91 AD3d 1121, 1122 [2012] [internal quotation marks and citation omitted], lv denied 18 NY3d 959 [2012]), there is a reasonable view of the evidence by which the jury could find that defendant's acts were justified (see People v Taylor, 156 AD3d 86, 96 [2017], lv denied 30 NY3d 1120 [2018]; People v Ball, 154 AD3d 1060, 1061-1062 [2017]). Accordingly, it was error for County Court not to instruct the jury on the defense of justification such that a new trial is required. In light of this determination, defendant's remaining contention has been rendered academic.
Garry, P.J., and Lynch, J., concur.
Colangelo, J. (dissenting).
We respectfully dissent.
In our view, County Court acted properly in admitting evidence of defendant's earlier behavior and in refusing to charge the jury on the defense of justification.
In our view, County Court did not err in permitting the People to elicit testimony on redirect examination of the police officer who arrested defendant regarding crimes or bad acts that he allegedly committed earlier in the day, prior to the indicted instant offense. "When a party opens the door during cross-examination to excluded evidence, the opponent may seek to admit the excluded evidence in order to explain, clarify and fully elicit the question that has been only partially exposed on cross-examination" (People v Mateo, 2 NY3d 383, 425 [2004] [internal quotation marks and citations omitted], cert denied 542 US 946 [2004]). "A trial court has the discretion to decide door opening issues by considering whether, and to what extent, the evidence or argument said to open the door is incomplete and misleading, and what if any otherwise inadmissible evidence is reasonably necessary to correct the misleading impression" (People v George, 199 AD3d 1064, 1066 [2021] [internal quotation marks and citations omitted], lv denied 37 NY3d 1146 [2021]; see People v Massie, 2 NY3d 179, 184 [2004]).
On cross-examination, defense counsel asked the police officer who defendant allegedly harassed and who had transported defendant to the jail if he knew defendant on December 1, 2018 and if he knew whether defendant called the police station because his son was missing. The [*3]officer testified that he was dispatched to the vicinity of an apartment building earlier that day for that reason. Then, defense counsel asked the officer if defendant "appear[ed] calm" while being processed at the jail, to which the officer responded that "[defendant] was calm inside [his] vehicle [during the transport and when he] brought him in." Prior to redirect examination, the prosecutor argued — outside of the jury's presence — that he could ask the officer about the initial police call because defense counsel had opened the door to such. County Court agreed and permitted such questioning. The officer testified that the call he responded to was that a young child was missing from an apartment building. The officer, after speaking to the property manager and learning that defendant was behaving aggressively toward him and did not live in the building, was approached by defendant. When defendant reached approximately 18 inches away from the officer, the officer asked him, "Hey, give me some space. What's your name?" Defendant identified himself and did not move back. The officer "put [his] hand up, [placed his] hand lightly on [defendant's] chest where his jacket was and said '[j]ust please step back, give me some space.'" The officer testified that he again requested that defendant step back, and defendant took the officer's arm and "slapped [it] off of him," and then the officer "went hands on and attempted to take [defendant] to the ground." The officer arrested defendant for the offense of harassment in the second degree. Before defendant was placed inside the car, he spat on the hood of the car, and told the officer, "When you're out of blue, you're f****** dead. You're dead."
County Court determined that, even though defense counsel had not questioned the officer about why defendant was arrested or what specifically had transpired that led to his arrest, it was appropriate for the People to follow up on the question that defense counsel had initially asked "in such a way to impress upon the jury that [defendant] was simply calling the police because his son was missing and that may not be at all accurate." We agree. The evidence elicited on cross-examination was incomplete and misleading and provided the jury with no context as to how defendant's seemingly innocuous call to the police about his son led to his arrest and the eventual assault on a sergeant at the jail. In our view, the details elicited on redirect were essential to explain, clarify and fully elicit the question that had been only partially exposed on cross-examination (see People v Mateo, 2 NY3d at 425). Accordingly, the redirect examination as to defendant's behavior earlier in the day was "reasonably necessary to correct the misleading impression" (People v George, 199 AD3d at 1066 [internal quotation marks and citations omitted]).
Even if County Court should not have allowed such questioning on redirect examination, any error in this regard was harmless[*4]. "An error of law may be found harmless where 'the proof of the defendant's guilt, without reference to the error, is overwhelming' and where there is no 'significant probability . . . that the jury would have acquitted the defendant had it not been for the error'" (People v Arafet, 13 NY3d 460, 467 [2009], quoting People v Crimmins, 36 NY2d 230, 241-242 [1975]). The evidence against defendant consisted of the testimony of the correction officers who were present at the jail when the assault occurred, the chemical agents policy, the sergeant's medical records and the video of the assault from two different angles. We find that this evidence overwhelmingly established defendant's guilt beyond a reasonable doubt, and there was no "reasonable possibility that the . . . error may have contributed to the defendant's conviction" (People v Serrano, 200 AD3d 1340, 1346 [2021], lv granted 38 NY3d 931 [2022]).
In our view, defendant was not entitled to a justification charge. "'Although the record must be considered in the light most favorable to the accused, a court need not charge justification if no reasonable view of the evidence establishes the elements of the defense'" (People v Sands, 157 AD3d 1136, 1137 [2018], lv denied 31 NY3d 986 [2018], quoting People v Reynoso, 73 NY2d 816, 818 [1988]). "[A] person may . . . use physical force upon another person when and to the extent he or she reasonably believes such to be necessary to defend himself, herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful physical force by such other person" (Penal Law § 35.15 [1]). The police officer who transported defendant to the jail testified that when his patrol car reached the "sally port" or secure garage area of the jail, defendant was removed from the vehicle and turned over to the staff at the jail. The testimony establishes that defendant was subject to a pat frisk of his clothing and person and was asked several times to remove his boots, but he refused to comply. The sergeant at the jail called for other correction officers to enter the sally port, and defendant was given a direct order to remove his boots, which he did not do. The sergeant then told defendant that he would spray defendant with a chemical agent akin to pepper spray if he did not comply and the sergeant then removed the spray from his belt and again gave defendant a direct order to "[r]emove [his boots]" or he was "going to be sprayed." Defendant did not remove his boots and the spray was administered to defendant's face. Within seconds of being sprayed, defendant, who was facing the wall, came off the wall and punched the sergeant in the left side of his face with a closed fist, hitting his eye. The sergeant fell toward the driver side door of the police officer's vehicle and braced himself next to the vehicle. Defendant continued moving towards the sergeant and then, with his left hand, grabbed the hand-held radio from the [*5]hood of the vehicle and began to swing it towards other officers as he was going down. Once defendant was down, multiple officers eventually gained control of defendant's legs and arms.
The correction officer who was instructed to pat frisk defendant testified that after he checked defendant's clothing and patted his hands over defendant's body to check for contraband, he asked defendant to remove his footwear in accordance with standard procedure. The officer explained that defendant was to be given county-issued footwear to enter the facility and his footwear needed to be searched to ensure that contraband does not enter the jail. It is undisputed that the order given to defendant to remove his boots was a lawful order. Defendant responded by saying, "And then what? What comes next? 'Please take your footwear off.'" The officer testified that he heard the sergeant advise defendant that if he did not remove his footwear, he would be sprayed. The sergeant stated that defendant did not remove his boots because he wanted the officer to say "please." Further, the sergeant testified that between 8 and 10 minutes elapsed between the first order to defendant to remove his boots and the time that the spray was administered and only after several attempts to get defendant to comply, including pleading with him, had failed. The chemical agents policy at the jail states, "After verbal commands have failed, spray the inmate." As the sergeant and other officers testified, the spray is used upon refusal of a direct order, instead of "going hands on where somebody [including the officers] could get hurt."
According to the written chemical agents policy at this jail, chemical agents may be used without supervisory authority "[i]n emergency situations, when a delay in [their use] presents an immediate threat of death, or serious physical injury." Further, chemical agents may be used without prior notification of facility health services staff "in emergency situations when a delay in the use of such agents presents an immediate threat of death or serious physical injury, [or], severely threatens the safety or security of the facility." Incidents that may require the use of chemical agents include "[a]fter verbal commands have failed, spray the inmate." Here, the officers did not know what potentially dangerous items might be concealed in defendant's boots; items such as knives, needles and drugs have been removed from footwear in the past. As no reasonable view of the evidence reflects that an act of unlawful physical force was committed against defendant (see People v Sands, 157 AD3d at 1137), County Court was not required to charge the jury on the defense of justification.
We would affirm.
McShan, J., concurs.
ORDERED that the judgment is reversed, on the law, and matter remitted to the County Court of Franklin County for a new trial.

Footnotes

Footnote 1: Testimony of the witnesses differed as to the amount of time that had elapsed and the video of the incident lacks audio. However, we note that defendant was sprayed with the pepper spray approximately four minutes into the video, which was less than two minutes after he was first presented with the jail footwear that he was directed to change into.

Footnote 2: That the use of the pepper spray was permissible under certain circumstances pursuant to the policies of the Franklin County Jail does not change this determination.